UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
SALVATORE GITTO                          )
AND PHYLLIS GITTO,                       )
                                         )
              Plaintiffs,                )
                                         )        Civil Action No. 07 CV 4771 (DC)
vs.                                      )
                                         )
A.W. CHESTERTON CO., INC.,               )
*et al.*,                                )
                                         )
              Defendants.                )
_____         )

## EATON HYDRAULICS INC., F/K/A VICKERS, INCORPORATED'S
## MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Andrew Sapon, Esq. (Bar No. AS-1536)
Patrick Steinbauer, Esq.
Bivona & Cohen, P.C.
Wall Street Plaza
88 Pine Street
New York, NY  10005-1886
(212) 363-3100 (phone)
(212) 363-9824 (fax)


*Of Counsel:*
Raymond B. Biagini, Esq.
Lisa M. Norrett, Esq.
John W. Lomas, Jr., Esq.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C.  20006
(202) 496-7500 (phone)
(202) 496-7756 (fax)

**Attorneys for Defendant
Eaton Hydraulics Inc., f/k/a
Vickers, Incorporated**

Dated: July 6, 2007

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ...................................................................1

SUMMARY OF ARGUMENT ........................................................................................4

ARGUMENT ...................................................................................................................8

I.   FEDERAL OFFICER REMOVAL IS PROPER ....................................................8

     A.   AS A MATTER OF LAW, EHI MAY REMOVE PLAINTIFFS' FAILURE TO WARN CLAIMS UNDER THE FEDERAL OFFICER REMOVAL STATUTE ....................................................8

          1.   FEDERAL OFFICER REMOVAL MAY APPLY, AS A MATTER OF LAW, TO PLAINTIFFS' FAILURE TO WARN CLAIMS ...................................................8

               A.   *NESBIET* HAS NOT BEEN INVALIDATED BY *IN RE MTBE* ...........................................9

               B.   PLAINTIFFS' CITATION TO ASBESTOS CASES FROM OTHER JURISDICTIONS IS INAPPOSITE .......................................................11

          2.   AS A MATTER OF LAW, EHI MAY ASSERT THE GOVERNMENT CONTRACTOR DEFENSE TO PLAINTIFFS' FAILURE TO WARN CLAIMS .....................................13

     B.   EHI SATISFIES ALL THREE ELEMENTS OF THE FEDERAL OFFICER REMOVAL TEST ...............................................................13

          1.   EHI IS A "PERSON" UNDER THE FEDERAL OFFICER REMOVAL STATUTE ...........................................................14

          2.   EHI "ACTED UNDER" THE DIRECT AND DETAILED CONTROL OF A FEDERAL OFFICER REGARDING THE VERY CONDUCT AT ISSUE ..........................................14

          3.   EHI ASSERTS THREE COLORABLE FEDERAL DEFENSES TO PLAINTIFFS' CLAIMS ..................................19

               A.   GOVERNMENT CONTRACTOR DEFENSE ............................20

               B.   DEFENSE PRODUCTION ACT ..................................................22

               C.   DERIVATIVE SOVEREIGN IMMUNITY ..................................24

CONCLUSION.............................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Arness v. Boeing North America, Inc.*,
  997 F. Supp. 1268 (C.D. Cal. 1998) .................................................................................24

*Boyle v. United Technologies Corp.*,
  487 U.S. 500 (1988).................................................................................................13, 20

*Dolphin Gardens, Inc. v. United States*,
  243 F. Supp. 824 (D. Conn. 1965).....................................................................................25

*Eastern Air Lines, Inc. v. McDonnell Douglas Corp.*,
  532 F.2d 957 (5th Cir. 1976) .............................................................................................23

*Fortier v. Ampco-Pittsburgh Corp.*,
  No. 3:07-cv-00005 (D. Conn. Mar. 5, 2007) ...........................................................12

*Freiberg v. Swinerton & Walberg Property Services, Inc.*,
  245 F. Supp. 2d 1144 (D. Colo. 2002) .............................................................................11

*Fung v. Abex Corp.*,
  816 F. Supp. 569 (N.D. Cal. 1992) ...................................................................................13

*Green v. A.W. Chesterton Co.*,
  366 F. Supp. 2d 149 (D. Me. 2005) ..................................................................................12

*Hilbert v. Aeroquip, Inc.*,
  __ F. Supp. 2d __, No. 07-10205, 2007 WL 1186041 (D. Mass. Apr. 12, 2007) ...................11

*In re "Agent Orange" Product Liability Litigation*,
  304 F. Supp. 2d 442 (E.D.N.Y. 2004) ..............................................................................22

*In re Joint Eastern and Southern District New York Asbestos Litigation*,
  897 F.2d 626 (2d Cir. 1990)......................................................................................13, 20

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation v. Atlantic
  Richfield Co.*,
  __ F.3d __, Nos. 04-5974-cv(L), 04-6056-cv(CON), 2007 WL 1500338 (2d Cir.
  May 24, 2007)...................................................................................9, 10, 13, 14

*Katz v. Warner-Lambert Co.*,
  9 F. Supp. 2d 363 (S.D.N.Y. 1998).................................................................................3

*Madden v. Able Supply Co.*,
    205 F. Supp. 2d 695 (S.D. Tex. 2002) ...............................................................9, 12

*Magnin v. Teledyne Continental Motors*,
    91 F.3d 1424 (11th Cir. 1996) ...............................................................................19

*Mesa v. California*,
    489 U.S. 121 (1989)...............................................................................................19

*Miami Valley Hospital v. Community Insurance Co.*,
    No. 3:05-cv-297, 2006 WL 2252669 (S.D. Ohio Aug. 7, 2006) ............................3

*Myers v. United States*,
    323 F.2d 580 (9th Cir. 1963) .................................................................................25

*Nesbiet v. General Electric Co.*,
    399 F. Supp. 2d 205 (S.D.N.Y. 2005).............................................................. *passim*

*Niemann v. McDonnell Douglas Corp.*,
    721 F. Supp. 1019 (S.D. Ill. 1989) ........................................................................21

*Ryan v. Dow Chemical Co.*,
    781 F. Supp. 934 (E.D.N.Y. 1992) .................................................................10, 24

*Watson v. Philip Morris Cos., Inc.*,
    127 S. Ct. 2301 (2007)...........................................................................................11

*Yearsley v. W.A. Ross Construction Co.*,
    309 U.S. 18 (1940)...........................................................................................24, 25

## STATUTES

28 U.S.C. § 1442(a)(1) (2006) .........................................................................................8

28 U.S.C. § 1446(b) (2006) .............................................................................................2

50 U.S.C. app. §§ 2061-2171 (2006) (Defense Production Act).............................6, 7, 22

50 U.S.C. app. § 2157 (2006) ........................................................................................22

Second War Powers Act, Pub. L. No. 77-507, 56 Stat. 176 (1942) ..............................23

Defendant Eaton Hydraulics Inc., formerly known as Vickers, Incorporated ("EHI") hereby files this Memorandum in Opposition to Plaintiffs' Motion to Remand. As discussed in detail below, Plaintiffs' Motion to Remand should be denied, as this case was properly removed on federal officer removal grounds.

Indeed, all of EHI's activities in question were performed under the direct and detailed control of officers of the United States Navy. As succinctly stated by retired U.S. Navy Rear Admiral Ben J. Lehman, "[i]n the 1950s and 1960s, the Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation and warnings associated with its ships and did not permit deviation by any of its contractors. Indeed, any warnings regarding asbestos hazards were prescribed and proscribed by the U.S. Navy, and contactors such as EHI could not deviate from such warnings to comply with any state-law imposed warnings." (Declaration of Ben J. Lehman ("Lehman Decl.") ¶ 10, attached hereto as Ex. A.)[1]

## NATURE AND STAGE OF PROCEEDINGS

Plaintiffs served their Summons and Complaint on EHI on April 27, 2007. On May 7, 2007, EHI received from Plaintiffs' counsel Plaintiffs' Answers to Defendants' Fourth Amended Standard Set of Interrogatories and Request for Production of Documents ("Plaintiffs' Discovery Responses"). In Plaintiffs' Discovery Responses, Plaintiff Salvatore Gitto alleges exposure to EHI pumps and valves aboard several U.S. Navy ships while employed by the U.S. Navy from 1951 to 1952 and 1954 to 1965 at the Brooklyn Navy Yard. (Pls.' Interrog. Resps., Chart A.)

---

[1] As set forth below, Admiral Lehman is one of three retired U.S. Navy officers who provide declarations in support of this brief and testify as to the direct and detailed control exercised by the U.S. Navy over EHI's conduct at issue.

Plaintiff Salvatore Gitto subsequently testified at his deposition on May 16, 2007 and June 7, 2007 that he was exposed to asbestos in EHI pumps and/or valves aboard the following U.S. Navy ships:  USS Hornet (Gitto Dep. 170:25-171:3, May 16, 2007; Gitto Dep. 372:10-12, June 7, 2007); USS Franklin D. Roosevelt ("FDR") (Gitto Dep. 189:15-190:2, 192:25-193:7, May 16, 2007; Gitto Dep. 356:11-13, 375:7-12, June 7, 2007); and USS Lexington (Gitto Dep. 270:11-270:14, May 16, 2007; Gitto Dep. 364:10-15, 375:7-12, June 7, 2007).  Plaintiff asserted that such exposure occurred while he worked at the Brooklyn Navy Yard from 1951 to 1952 and 1954 to 1966.  (Gitto Dep.  17:14-16, 18:23-19:4, May 16, 2007.)[2]

EHI timely filed its Notice of Removal on June 5, 2007, within thirty days of receipt of Plaintiffs' Discovery Responses, as required by 28 U.S.C. § 1446(b) (2006).  On June 13, 2007, Plaintiffs submitted a pre-motion conference letter, requesting that the Court accept the letter in lieu of a formal motion to remand and grant expedited treatment to their application.[3]  On June 18, 2007, the Court ordered that it would accept Plaintiffs' pre-motion conference letter in lieu of a formal motion to remand and it set a briefing schedule for Plaintiffs' Motion.  Plaintiffs assert in their Motion to Remand that their "sole claim is that [EHI] breached its state-law duty to warn about the asbestos hazards associated with the use of [EHI] equipment," (Pls.' Mot. to Remand at 1), and they attach their Second Notice of Amendment and Second Amended Complaint (Pls.'

---

[2] While it is not specifically relevant for this brief, EHI disputes any allegation that its products here contained asbestos.

[3] In seeking expedited treatment, Plaintiffs asserted that this case is part of the November 2007 trial cluster in the New York City Asbestos Litigation ("NYCAL") and that the expedited discovery schedule had already commenced.  Contrary to Plaintiffs' assertion, the New York Supreme Court no longer has jurisdiction over this case.  Further, despite an expedited schedule, cases in the NYCAL November 2007 trial cluster have not yet been assigned trial dates and indeed will not be assigned trial dates until at least November 2007.

Second Notice of Amendment and Second Am. Compl., dated May 30, 2007, attached as Ex. C to Plaintiffs' Mot. to Remand).  While Plaintiffs' Complaint and First Amended Complaint contain both failure to warn and non-failure to warn claims, Plaintiffs' Second Amended Complaint expressly limits Plaintiffs' claims arising from exposure to asbestos at the Brooklyn Navy Yard to claims concerning "failure to warn about the hazards of asbestos as alleged in New York Asbestos Litigation Standard Complaint No. 1."  (Pls.' Second Am. Compl. ¶ 3.)

EHI did not receive Plaintiffs' Second Amended Complaint before filing its Notice of Removal on June 5, 2007, and, in fact, only received Plaintiffs' Second Amended Complaint when served with Plaintiffs' Motion to Remand on June 13, 2007.  Nor did EHI receive Plaintiffs' First Amended Complaint until after it retrieved such complaint from the Court's docket following its removal.  As such, there is a question regarding the operative complaint for purposes of removal.  *See Katz v. Warner-Lambert Co.*, 9 F. Supp. 2d 363, 364 (S.D.N.Y. 1998) (holding that an amended complaint served after the notice of removal is not the operative complaint); *Miami Valley Hosp. v. Community Ins. Co.*, No. 3:05-cv-297, 2006 WL 2252669, at *1 n.1 (S.D. Ohio Aug. 7, 2006) (holding that even though defendants had not received service of plaintiffs' amended complaint prior to their removal, the operative complaint for removal purposes was the amended complaint because it was filed before defendants' removal). Accordingly, EHI addresses below the propriety of federal officer removal jurisdiction as to both Plaintiffs' failure to warn and non-failure to warn claims.

Pursuant to the Court's Order, EHI now files its Memorandum in Opposition to Plaintiffs' Motion to Remand, and demonstrates in detail below that this case was properly removed on federal officer removal grounds.

## SUMMARY OF ARGUMENT

Federal officer removal jurisdiction is appropriate in this case and thus Plaintiffs' Motion to Remand should be denied.  As discussed in detail below, EHI was acting under the direct and detailed control of federal officers (namely, the Secretaries of the United States Navy and their delegees) with respect to the very conduct at issue in this case, and EHI establishes several colorable federal defenses to Plaintiffs' claims.  Plaintiffs claim to have suffered injuries stemming from the design, manufacture, and maintenance of EHI pumps and valves installed on U.S. Navy ships in the 1950s and 1960s, as well as the provision or omission of warnings, labels, and other caution statements accompanying such equipment, including any warnings regarding asbestos hazards.

Contrary to Plaintiffs' assertions, EHI satisfies all three elements of the federal officer removal test.  EHI establishes the unrefuted first element by showing that, as a corporation, it is a "person" within the meaning of the federal officer removal statute.  Additionally, EHI satisfies the second element of the federal officer removal test by demonstrating that it acted under the detailed control of a federal officer with regard to the very conduct at issue.  Specifically, EHI's activities at issue were performed under the direct and detailed control of officers of the United States Navy.  Attached hereto are the declarations of three retired U.S. Navy officers, Rear Admiral Ben J. Lehman, Rear Admiral Roger B. Horne, Jr., and Captain Arthur F. Wardwell, who all testify, based on extensive first-hand knowledge, as to the direct and detailed control exercised by the U.S. Navy over EHI's conduct at issue.  *See* Lehman Decl.; Declaration of Roger B. Horne, Jr. ("Horne Decl."), attached hereto as Ex. B; Supplemental Declaration of Arthur F. Wardwell ("Wardwell Suppl. Decl."), attached hereto as Ex. C.  Also attached is the declaration of Robert Sawyer, M.D., who attests to the Navy's knowledge in the 1950s and

- 4 -

1960s regarding asbestos hazards.  *See* Declaration of Robert Sawyer, M.D.  ("Sawyer Decl."),

attached hereto as Ex. D.  Such testimony includes the following:

- "With regard to any EHI pumps or valves installed aboard U.S. Navy vessels in the 1950s and 1960s, all aspects of the design performance requirements and materials for construction, including thermal insulation, were specified by the Secretary of the Navy or his delegees."  (Horne Decl. ¶ 11.)

- "If asbestos was in any EHI pumps or valves during this time, it was prescribed explicitly by the Navy through such Navy specifications, and EHI could not unilaterally change or omit asbestos."  (Wardwell Suppl. Decl. ¶ 5.)

- "In the 1950s and 1960s, the Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation and warnings associated with its ships and did not permit deviation by any of its contractors."  (Lehman Decl. ¶ 10.)

- "EHI would not have been permitted, under the detailed Navy specifications, associated regulations, and procedures in the 1950s and 1960s, to affix any type of warnings, including any warnings regarding asbestos hazards, to EHI pumps or valves installed on U.S. Navy vessels, other than those required by the Navy."  (Wardwell Suppl. Decl. ¶ 7.)

- "EHI could not unilaterally change any warnings, markings, or labels, including those regarding asbestos hazards, affixed to or accompanying EHI pumps or valves, required by the Navy for any such equipment.  *See* Ex. 3 (MIL-STD-755, *Labels Containing Symbols for Packages and Containers for Hazardous Industrial Chemicals and Materials*, dated 31 August 1961)."  (*Id.*)

- "Attached as Exhibit 2 is a military standard, MIL-M-15071D (SHIPS), dated 6 June 1961, governing the Navy's requirements for all technical manuals for shipboard electrical and mechanical equipment, including any pumps or valves installed on Navy vessels.  This specification shows that the Navy had final approval over all such technical manuals and that any warnings, labels, or any other written information that accompanied a piece of equipment installed on Navy vessels, including any warnings regarding asbestos hazards, were explicitly prescribed or proscribed by the Navy through, among other things, its review and approval of these technical manuals."  (Lehman Decl. ¶ 11.)

- "[A]ny warnings regarding asbestos hazards were prescribed and proscribed by the U.S. Navy and contractors such as EHI could not deviate from such warnings to comply with any state-law imposed warnings."  (*Id.* ¶ 10.)

- "The Navy knew in the 1950s and 1960s that there were no warnings regarding asbestos hazards accompanying products installed on Navy vessels.  If a contractor such as EHI had unilaterally attempted to add such warnings, it would have been prohibited and proscribed from doing so."  (Wardwell Suppl. Decl. ¶ 11.)

- "Any EHI pumps or valves had to conform with military specifications or the U.S. Navy would not have permitted their installation on any Navy ships." (Lehman Decl. ¶ 11.)

- "Furthermore, to my knowledge, at all times, EHI apprised the military of any concerns of which it had actual knowledge relating to such pumps and valves." (Wardwell Suppl. Decl. ¶ 5.)

- "The information and knowledge possessed by the Navy with respect to the specification and use of asbestos, and the health hazards associated with asbestos use aboard Navy vessels, represented contemporary state-of-the-art and exceeded information and knowledge that reasonably could have been provided by a pump manufacturer such as EHI." (Sawyer Decl. ¶ 9.)

EHI also satisfies the third element of the federal officer removal test by raising several colorable federal defenses, including the government contractor defense, the Defense Production Act, and the derivative sovereign immunity doctrine. With respect to the government contractor defense, EHI demonstrates that the U.S. Navy approved reasonably precise specifications regarding the design and manufacture of pumps and valves installed on U.S. Navy vessels, including the nature of warnings to be affixed to and included with such equipment. Moreover, all EHI pumps or valves installed on Navy ships conformed to such specifications, as any deviations would have resulted in the Navy's rejection of such equipment. (Lehman Decl. ¶ 10.) EHI also warned the U.S. Navy of any risks concerning such pumps or valves for which the Navy was unaware. With regard to asbestos risks, however, the Navy was fully aware of the risks of asbestos and in fact had superior knowledge to that of any manufacturer such as EHI. *See* Sawyer Decl. ¶ 9.

EHI also establishes the Defense Production Act of 1950 ("DPA"), 50 U.S.C. app. §§ 2061-2171, as a colorable federal defense to Plaintiffs' claims. Here, EHI cannot be held liable to Plaintiffs for the activities at issue (*i.e.,* the design, manufacture, installation, maintenance and provision of warnings for products installed on Navy vessels), as such activities resulted directly from compliance with detailed and comprehensive Navy specifications

and directives.  As RADM Lehman explains, "[a]ll Navy equipment installed on Navy vessels in the 1950s and 1960s, including pumps and valves supplied by EHI to the Navy, were supplied in accordance with specific rated order contracts between the Navy and contractors such as EHI. No equipment could have been supplied without such a contract."  (Lehman Decl. ¶ 12.) Through these rated order contracts, EHI was required to comply with detailed specifications and directives regarding all aspects of EHI pumps and valves installed on U.S. Navy vessels, including all warnings affixed to or accompanying such products.  As such, the actions at issue result directly from compliance with Navy contracts and specifications and thus the DPA serves as a colorable federal defense to Plaintiffs' claims.

Finally, EHI demonstrates that the derivative sovereign immunity doctrine is another colorable federal defense to Plaintiffs' claims.  EHI's activities at issue were performed pursuant to contracts with the U.S. Navy and in accordance with Navy specifications and directives, and EHI's work conformed to such requirements.  (*Id.* ¶¶ 10, 12 ("[a]ny EHI pumps or valves had to conform with military specifications or the U.S. Navy would not have permitted their installation on any Navy ships.")  Through such contracts, the U.S. Navy directed contractors such as EHI to include specific warnings with their products and proscribed any warnings beyond those required by the Navy.  As Plaintiffs' alleged injuries result directly from EHI's actions performed pursuant to detailed Navy contracts and specifications, and EHI's work conformed to such requirements, EHI cannot be held liable for Plaintiffs' alleged injuries under the derivative sovereign immunity doctrine.

## ARGUMENT

## I.    FEDERAL OFFICER REMOVAL IS PROPER

The federal officer removal statute permits the removal of cases commenced in state court against "any officer (*or any person acting under that officer*) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1) (2006) (emphasis added).   In their Motion to Remand, Plaintiffs challenge EHI's federal officer removal, claiming that:  (a) as a matter of law, EHI cannot demonstrate that federal officer removal jurisdiction applies to Plaintiffs' failure to warn claims; and (b) EHI has failed to establish the elements required for federal officer removal.  Neither of these arguments has merit.

### A.    As A Matter Of Law, EHI May Remove Plaintiffs' Failure To Warn Claims Under The Federal Officer Removal Statute

Plaintiffs raise two threshold legal challenges to EHI's federal officer removal: (1) as a matter of law, federal officer removal does not apply to asbestos failure to warn claims in the absence of express regulations preventing warnings regarding asbestos hazards; and (2) as a matter of law, EHI cannot assert the government contractor defense as a colorable federal defense to Plaintiffs' failure to warn claims.  These challenges have no merit.

#### 1.    Federal Officer Removal May Apply, As a Matter of Law, to Plaintiffs' Failure to Warn Claims

Plaintiffs assert that, as a matter of law, federal officer removal does not apply to asbestos failure to warn claims in the absence of express regulations preventing warnings regarding asbestos hazards.  (Pls.' Mot. to Remand at 3.)  Plaintiffs are wrong.  The case law is clear that federal officer removal jurisdiction applies to asbestos failure to warn claims where the federal officer prevented the manufacturer from complying with its state-law duty to warn by controlling

all warnings accompanying the product.  *See, e.g., Nesbiet v. General Elec. Co.*, 399 F. Supp. 2d

205 (S.D.N.Y. 2005); *Madden v. Able Supply Co.*, 205 F. Supp. 2d 695 (S.D. Tex. 2002).

a.   <u>*Nesbiet* has not been invalidated by *In re MTBE*</u>

First, in support of their argument, Plaintiffs contend that this Court's decision in *Nesbiet*

has been invalidated by *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig. v.*

*Atlantic Richfield Co.,* __ F.3d __, Nos. 04-5974-cv(L), 04-6056-cv(CON), 2007 WL 1500338,

at *10 (2d Cir. May 24, 2007).  (Pls.' Mot. to Remand at 3 n.3.)  There is nothing in the *In re*

*MTBE* decision that invalidates or affects in any way this Court's decision in *Nesbiet*.

In *Nesbiet*, this Court upheld federal officer removal jurisdiction in a similar failure to

warn case against a Navy contractor arising from the plaintiff's exposure to asbestos while

working at the Brooklyn Navy Yard during World War II.  This Court found that the defendant,

who was supplying the Navy with marine steam turbines that the United States needed to build

Naval ships, satisfied the "acting under" and "causal nexus" requirements of federal officer

removal because it was acting under the direct and detailed control of U.S. Navy officers

regarding the provision of all warnings, and that such control directly interfered with the

defendant's ability to fulfill its state law obligations to warn about the hazards of asbestos.

*Nesbiet*, 399 F. Supp. 2d at 212.  This control was evidenced in part by military specifications,

MIL-M-15071A-G, that required that safety instructions be provided as "*dictated by the Navy*"

and "indicate[d] that the content of instruction manuals [was] subject to the approval of the

Navy."  *Id*. at 209 (emphasis in original).[4]  This Court further held that the defendant was not

---

[4] Included among the military specifications reviewed by the *Nesbiet* court is MIL-M-15071D, *id*. at 209 n.24, which Plaintiffs refer to in their Motion to Remand (Pls.' Mot. to Remand at 2 n.2).  The *Nesbiet* court admonished the plaintiffs in that case for mischaracterizing the specifications in arguing that the specifications "'imposed an affirmative requirement to warn on

*(Footnote cont'd on next page)*

required to provide direct evidence that the U.S. Navy specifically prohibited it from warning about asbestos. *Id.*

In direct contrast to *Nesbiet*, *In re MTBE* addressed federal officer removal jurisdiction in the context of a regulatory case and found that certain corporations were not acting under the direction of the Environmental Protection Agency ("EPA") when they manufactured, refined, marketed, or distributed gasoline containing the oxygenating agent methyl tertiary butyl ether ("MTBE"). *In re MTBE*, 2007 WL 1500338, at *11-18. The court found that the EPA regulations at issue did not require the use of MTBE, nor did they provide any specifications for how gasoline should be produced or for government approval of the gasoline product. *Id*. Furthermore, *In re MTBE* never even discussed failure to warn claims, let alone invalidated *Nesbiet*'s holding regarding the application of federal officer removal to such claims.

Plaintiffs also erroneously assert that the "Second Circuit [in *In re MTBE*] has now made clear that reference to 'specific regulations' – that caused the act or omission upon which liability is based - is mandatory." (Pls.' Mot. to Remand at 3 n.3.) To the contrary, in referencing "specific regulations," the *In re MTBE* court was quoting from the 1992 decision in *Ryan v. Dow Chemical Co.*, 781 F. Supp. 934, 947 (E.D.N.Y. 1992). Moreover, this quotation from *Ryan* merely asserted the well-established requirement that federal officer removal requires a showing that the "particular conduct being sued upon is closely linked to detailed and specific regulations." *Id*. As demonstrated throughout this brief, EHI satisfies this requirement by

---

*(Footnote cont'd from previous page.)*

contractors.'" *Id*. at 208-09. Plaintiffs here present a similarly flawed argument with respect to MIL-M-1507D in their Motion to Remand. (Pls.' Mot. to Remand at 2 n.2.)

providing extensive evidence that the Navy controlled all aspects of EHI products installed on Navy vessels, including prescribing and proscribing all warnings accompanying such products.[5]

       b.      <u>Plaintiffs' Citation to Asbestos Cases From Other Jurisdictions Is Inapposite</u>

In support of their argument, Plaintiffs also cite several cases from other jurisdictions. (Pls.' Mot. to Remand at 3.)  Each of these cases is distinguishable.  In *Hilbert v. Aeroquip, Inc.*, __ F. Supp. 2d __, No. 07-10205, 2007 WL 1186041 (D. Mass. Apr. 12, 2007), the affiant, one of the defendant's employees, did not work for the defendant during the time period at issue and failed to demonstrate that he reviewed any contracts from the relevant period or spoke with anyone having personal knowledge of that time period.  2007 WL 1186041, at *2.  As such, the affiant had no personal knowledge regarding the extent that military regulations prevented the defendant from complying with state-law requirements regarding product warnings.  *Id*. at *7.  Similarly, in *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144 (D. Colo. 2002), nothing in the relevant affidavits even addressed whether the defendant was prevented from providing state-law imposed warnings.  *Id.* at 1156.  Rather, the defendant's three-paragraph affidavit stated that the defendant used materials specified by engineering and operating contractors, and thus the defendant was "acting under" operating and engineering contractors, and not the U.S. government.  *Id*. at 1153-54.

---

[5] Plaintiffs also cite to the Supreme Court's recent decision in *Watson v. Philip Morris Cos., Inc.*, 127 S. Ct. 2301 (2007), to support their argument that federal officer removal jurisdiction does not apply in this case.  *Watson*, however, supports, rather than undermines, federal officer removal jurisdiction in this case.  As the Supreme Court stated, federal officer removal is particularly appropriate in the context of government contracting as a "private contractor . . . [is] helping the Government to produce an item that it needs."  *Watson*, 127 S. Ct. at 2308.

The decision in *Green v. A.W. Chesterton Co.*, 366 F. Supp. 2d 149 (D. Me. 2005) and the unpublished decision in *Fortier v. Ampco-Pittsburgh Corp.*, No. 3:07-cv-00005 (D. Conn. Mar. 5, 2007) (attached as Ex. E to Pls.' Mot. to Remand) are also inapposite. In *Green*, there was no issue of Navy control over warnings. Instead, the issue was whether or not the Navy specified the use of asbestos. *Green*, 366 F. Supp. 2d at 157. Moreover, the affidavit submitted by the defendant on that issue was not based on personal knowledge and failed to address whether the Navy specified the use of the asbestos in the product. *Id*. While the court in *Fortier* at least addressed the issue of Navy control over warnings, the court held that the defendants failed to demonstrate that "the Navy had the sole authority to dictate the warnings affixed to or provided with the equipment." *Fortier*, No. 3:07-cv-00005, at 4-5. There, the defendant failed to provide testamentary or documentary evidence demonstrating that the defendant was prevented from providing state-law imposed warnings. *Id.*

Here, in direct contrast, EHI demonstrates through extensive testamentary and documentary evidence that the U.S. Navy prescribed and proscribed the warnings affixed to and accompanying any EHI pumps or valves installed on U.S. Navy ships in the 1950s and 1960s, including any warnings regarding asbestos, and EHI could not deviate in any way from these Navy-dictated warnings. This evidence, including the declarations of several retired U.S. Navy officers and detailed military specifications, shows that the U.S. Navy prevented EHI from complying with any state-law imposed warnings, including any warnings regarding asbestos. As such, and unlike the cases cited by Plaintiffs, EHI demonstrates that federal officer removal applies to Plaintiffs' failure to warn claims. *See, e.g., Nesbiet,* 399 F. Supp. 2d 205; *Madden*, 205 F. Supp. 2d at 702.

2.      As a Matter of Law, EHI May Assert the Government Contractor Defense to Plaintiffs' Failure to Warn Claims

Plaintiffs also claim that EHI may not, as a matter of law, assert the government contractor defense as a colorable federal defense to Plaintiffs' failure to warn claims.  (Pls.' Mot. to Remand at 3 n.4.)  Once again, Plaintiffs are simply wrong.  The case Plaintiffs cite in support of this erroneous statement, *In re Joint Eastern and Southern Dist. New York Asbestos Litig.*, 897 F.2d 626 (2d Cir. 1990), holds exactly the opposite - "we follow the other federal courts which already have held that *Boyle* may apply to a state law failure-to-warn claim."  *Id.* at 629 (collecting cases); *see also Nesbiet*, 399 F. Supp. 2d at 212-13 (recognizing the Second Circuit's holding that the *Boyle* test applies to state failure to warn claims).  The Second Circuit further explains that "[j]ust as with conflicting federal and state design requirements, the existence of conflicting federal and state warning requirements can undermine the Government's ability to control military procurement."  *In re Asbestos Litig.*, 897 F.2d at 629.

**B.      EHI Satisfies All Three Elements Of The Federal Officer Removal Test**

Contrary to Plaintiffs' assertions, EHI has satisfied all of the elements for federal officer removal.  Federal officer removal is proper where a defendant can (1) demonstrate that it is a "person" within the meaning of the statute; (2) establish that it acted under the direction of a federal agency or officer, and show a causal nexus between the claims at issue and the conduct performed under color of federal office; and (3) raise a colorable federal defense.  *In re MTBE*, 2007 WL 1500338, at *10; *Nesbiet*, 399 F. Supp. 2d at 210; *Fung v. Abex Corp.*, 816 F. Supp. 569, 571-72 (N.D. Cal. 1992).  As explained in detail below, EHI satisfies all of these elements as it was acting under the direct and detailed control of U.S. Navy officers in performing the very conduct at issue, and it asserts several colorable federal defenses to Plaintiffs' claims.  As such, federal officer removal is proper.

       1.      <u>EHI is a "Person" Under the Federal Officer Removal Statute</u>

As a corporation, EHI qualifies as a "person" within the meaning of the federal officer removal statute. *See In re MTBE*, 2007 WL 1500338, at \*11. Plaintiffs do not dispute that EHI has established this initial element for federal officer removal.

       2.      <u>EHI "Acted Under" the Direct and Detailed Control of a Federal Officer Regarding the Very Conduct at Issue</u>

Defendants satisfy the second prong of the federal officer removal test by demonstrating that their actions at issue were undertaken under the direct and detailed control of federal officers. *See Nesbiet*, 399 F. Supp. 2d at 211. Attached are the declarations of three retired U.S. Navy officers, Rear Admiral Ben J. Lehman, Rear Admiral Roger B. Horne, Jr., and Captain Arthur F. Wardwell. *See* Lehman Decl.; Horne Decl.; Wardwell Suppl. Decl.

These declarants testify, based on their extensive first-hand knowledge, that EHI's actions at issue were taken under the direct and detailed control of federal officers. They assert that, during the relevant time period, the U.S. Navy directed and controlled the design, manufacture, installation, and maintenance of all equipment installed on U.S. Navy vessels, such as EHI pumps and valves, and prescribed and proscribed the warnings, labels, and other caution statements affixed to or accompanying all such products. (Lehman Decl. ¶ 10; Horne Decl. ¶¶ 11, 12; Wardwell Suppl. Decl. ¶¶ 5, 7, 11.) These declarants all served in senior positions within the Navy during the relevant time period and have personal knowledge of the activities at issue in the case. (Lehman Decl. ¶¶ 3-5, 7, 8; Horne Decl. ¶¶ 9, 10; Wardwell Suppl. Decl. ¶¶ 2, 3.) RADM Lehman, who was in the Navy and Naval Reserve from the early 1940s through the late 1960s, along with positions at several major shipbuilding companies, served as, among other things, Ship Superintendent and Dry Docking Officer at the Brooklyn Navy Yard between 1942 and 1944. (Lehman Decl. ¶¶ 2-4.) During his tenure in the Navy, RADM Lehman was

personally involved with the "supervision or oversight of ship alterations and machinery and equipment overhauls at the New York Naval Shipyard (formerly the Brooklyn Navy Yard) and at the San Francisco Naval Shipyard (formerly Hunter's Point). This included liaison with the ship's officers to assure them that every aspect of the shipyard's work and of the machinery, equipments, and materials used was in complete accordance with the U.S. Navy's standards, specifications, and approved work practices." (*Id.* ¶ 8.)

Similarly, RADM Horne, Jr., who served in the Navy from 1956 through 1991, "concentrated in ship design, engineering, construction, overhaul and inspection, and ultimately achieved the rank of Chief Engineer and Deputy Commander, Naval Sea Systems Command ("NAVSEA") for Ship Design and Engineering." (Horne Decl. ¶¶ 1, 3.) In that position, he was responsible for "the maintenance of Navy ship military specifications and for monitoring compliance with the specifications by all vendors and contractors of Navy equipment." (*Id.* ¶ 10.) Also attached is the supplemental declaration of Captain Wardwell, who served in the Navy from 1958 to 1982, and served as, *inter alia*, Commanding Officer of the Office of Supervisor of Shipbuilding, Conversion, and Repair, San Francisco. (Wardwell Decl. ¶¶ 1, 4.)

Based on their extensive first-hand knowledge, these declarants all testify that the U.S. Navy controlled the design, manufacture, installation and maintenance of EHI pumps and valves installed on U.S. Navy vessels in the 1950s and 1960s, and the provision of warnings regarding such equipment. (Lehman Decl. ¶ 10; Horne Decl. ¶¶ 11, 12; Wardwell Suppl. Decl. ¶¶ 5, 7, 11.) As with all equipment on U.S. Navy vessels, the Secretary of the Navy or his delegees exclusively developed the designs, regulations, and specifications for the EHI equipment at issue. (Wardwell Suppl. Decl. ¶ 4.) In his supplemental declaration, Captain Wardwell further explains that

- 15 -

the Secretary of the Navy, or his delegees, including Naval Sea
Systems Command ("NAVSEA") and the specific Contracting
Officers, exclusively developed the ship designs and plans, as well
as comprehensive and detailed regulations and specifications for
all shipboard equipment, and such Navy officers supervised,
enforced, and approved compliance with these Navy plans,
regulations, and specifications by contractors such as EHI.

(*Id.*)

Notably, Plaintiffs have offered no proof that EHI products contained asbestos, and EHI

disputes any such allegation.  Even assuming *arguendo* that EHI's products did contain asbestos,

however, the use was controlled by the Navy.   In addition to developing the designs,

specifications, and regulations for the EHI products on these Navy vessels, the U.S. Navy

explicitly prescribed the use of materials in these EHI products.  RADM Horne explains that

[w]ith regard to any EHI pumps or valves installed aboard U.S.
Navy vessels in the 1950s and 1960s, all aspects of the design
performance requirements and materials for construction,
including thermal insulation, were specified by the Secretary of the
Navy or his delegees.  Such Navy specifications prescribed the use
of asbestos-containing insulation for products.  *In other words, if
asbestos was in any pumps or valves supplied by EHI, it was
prescribed explicitly by the Navy through such Navy specifications,
and EHI could not unilaterally change or omit asbestos.*

(Horne Decl. ¶ 11) (emphasis added).  Similarly, RADM Lehman explains that

[i]n the 1950s and 1960s, the Navy dictated every aspect of the
design, manufacture, installation, overhaul, written documentation
and warnings associated with its ships and did not permit deviation
by any of its contractors . . . .  Any EHI pumps or valves had to
conform with military specifications or the U.S. Navy would not
have permitted their installation on any Navy ships.

(Lehman Decl. ¶ 10.)

With respect to any warnings, EHI similarly was directed to include specific warnings on

its pumps and valves supplied for these Navy vessels, and was proscribed from including any

warnings beyond those required by the Navy.  (Horne Decl. ¶¶ 12, 13; Lehman Decl. ¶¶ 10, 11;

Wardwell Suppl. Decl. ¶¶ 7-11.)  As Captain Wardwell explains:

> The U.S. Navy had precise specifications as to the nature of any communications affixed to equipment supplied by EHI to the Navy.  EHI would not have been permitted, under the detailed Navy specifications, associated regulations, and procedures in the 1950s and 1960s, to affix any type of warnings, including any warnings regarding asbestos hazards, to EHI pumps or valves installed on U.S. Navy vessels, other than those required by the Navy.  *EHI could not unilaterally change any warnings, markings, or labels, including those regarding asbestos hazards, affixed to or accompanying EHI pumps or valves, required by the Navy for any such equipment.*  *See* Ex. 3 (MIL-STD-755, *Labels Containing Symbols for Packages and Containers for Hazardous Industrial Chemicals and Materials*, dated 31 August 1961).

(Wardwell Suppl. Decl. ¶ 7) (emphasis added).  Significantly, Captain Wardwell further testifies

that

> [t]he Navy knew in the 1950s and 1960s that there were no warnings regarding asbestos hazards accompanying products installed on Navy vessels.  If a contractor such as EHI had unilaterally attempted to add such warnings, it would have been prohibited and proscribed from doing so.

(*Id.* ¶ 11.)

Attached to Captain Wardwell's declaration as Exhibit 4 is a military specification, MIL-

M-15071D (SHIPS), dated 6 June 1961, which Plaintiffs attached as Exhibit G to their Motion to

Remand.  Captain Wardwell explains that this military specification governed the Navy's

requirements for all technical manuals for shipboard electrical and mechanical equipment,

including any pumps or valves installed on Navy vessels.  (*Id.* ¶ 8.)  Plaintiffs contend that this

military specification contradicts Captain Wardwell's testimony in his declaration.  (Pls.' Mot. to

Remand at 2 n.2.)  To the contrary, this specification provides additional documentary support

for the testimony proffered from all three Navy declarants.  As Captain Wardwell asserts, the

specification "demonstrates that the Navy had final approval over all such technical manuals and that any warning, label, or other caution statement on equipment installed on Navy vessels was explicitly prescribed or proscribed by the Navy through, among other things, its review and approval of these technical manuals."  (Wardwell Suppl. Decl. ¶ 8.)  Captain Wardwell further testifies that MIL-M-15071D,

> paragraphs 3.1.1, 3.1.2, and 3.5.2, all prescribe the Navy's approval of such manuals, both Class A and Class B manuals. Paragraph 3.1.1 states that "[a]pproval of a class A manual will be by the Bureau of Ships only and, once approved, the basic manual shall not be modified without the approval of the Bureau of Ships." Similarly, paragraph 3.1.2 requires that "[o]nce a class B manual has been approved by the Bureau or its field representative, the manual shall not be modified without approval of the Bureau of Ships."  Paragraph 3.5.2 also mandates that "[f]our copies of each revision shall be submitted to the Bureau for approval and assignment of a change number."  As such, any suggestion that EHI could deviate in any way from the warnings, labels, or caution statements prescribed and proscribed by the Navy is incorrect.

(*Id.* ¶ 9.)  In short, "[c]ontractors such as EHI could not place any warnings in such technical manuals unless they were explicitly reviewed and approved by the U.S. Navy, nor could they make any modifications to such manuals without the Navy's explicit direction."  (*Id.*)

RADM Horne also testifies that the predecessor military specification, MIL-T-15071B (SHIPS), dated 18 Aug. 1954, similarly demonstrates that "any warnings affixed to or accompanying equipment installed on Navy vessels were prescribed or proscribed by the Navy, through, among other things, its review and approval of all technical manuals."  (Horne Decl. ¶ 13.)  RADM Horne further asserts that

> This specification demonstrates that the Navy had final approval over all such technical manuals and that any warnings affixed to or accompanying equipment installed on Navy vessels were prescribed or proscribed by the Navy through, among other things, its review and approval of all technical manuals.  For example, Section 3.4.7.1 mandates that '[p]rior to the printing of the final

- 18 -

> manuals, a preliminary manual shall be prepared and submitted in
> duplicate to the bureau or agency concerned via the Government
> inspector for approval and assignment of a Navy NAVSHIPS
> identification number.'

(*Id.*)    Finally, RADM Lehman asserts that "any warnings regarding asbestos hazards were

prescribed and proscribed by the U.S. Navy, and contractors such as EHI could not deviate from

such warnings to comply with any state-law imposed warnings."  (Lehman Decl. ¶ 11.)

As all of EHI's actions at issue were prescribed and proscribed by the U.S. Navy, EHI

meets the second element of the federal officer removal test by demonstrating that Plaintiffs'

claims arise out of actions EHI performed under explicit federal direction.[6]

        3.      <u>EHI Asserts Three Colorable Federal Defenses To Plaintiffs' Claims</u>

EHI also satisfies the third prong of the federal officer removal test by presenting at least

one colorable federal defense to Plaintiffs' claims.  Indeed, EHI establishes numerous colorable

federal defenses, including the government contractor defense, the Defense Production Act of

1950, and the derivative sovereign immunity doctrine.

EHI need not show that all of these defenses will prevail, but only that one is plausible.

*See Mesa v. California*, 489 U.S. 121, 129 (1989); *Nesbiet,* 399 F. Supp. 2d at 210-11 ("a

defense may be colorable even if the court ultimately rejects it"); *Magnin v. Teledyne*

---

[6] Plaintiffs' assertion that statements in Captain Wardwell's declaration regarding the level of
control the U.S. Navy exercised over EHI, are lacking in foundation and barred by the best
evidence rule is simply wrong.  *See* Pls.' Mot. to Remand at 2-3.  Captain Wardwell's
declaration testimony, as with all of the Navy declarants' testimony attached hereto, is based on
personal knowledge and experience from his extensive Navy career, and is in no way lacking in
foundation nor barred by the best evidence rule.  *See* Wardwell Decl. ¶ 2, 8, 9; *see also Nesbiet*,
399 F. Supp. 2d at 208 (finding that an affiant's time working at a Navy ship yard during the
relevant time period was sufficient foundation for his statements regarding the Navy's "*complete*
control over *all* warnings placed on equipment or in accompanying technical manuals by [the
Navy's] contractors" (emphasis in original)).

*Continental Motors,* , 91 F.3d 1424, 1427 (11th Cir. 1996) (the stated federal defense "need only be plausible; its ultimate validity is not to be determined at the time of removal"). Here, EHI provides ample support to establish that several of its asserted federal defenses are colorable.

a.    Government Contractor Defense

First, EHI establishes the government contractor defense as a colorable federal defense to Plaintiffs' claims. Under the government contractor defense, EHI cannot be held liable to Plaintiffs because the U.S. Navy approved reasonably precise specifications regarding the design and manufacture of pumps and valves installed on Navy vessels, including the nature of warnings to be affixed to or included with such equipment; any pumps or valves manufactured by EHI conformed to such requirements; and EHI warned the U.S. Navy of any risks concerning such pumps and valves for which the Navy was unaware. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988); *see also In re Asbestos Litig.*, 897 F.2d at 629.

The attached declarations of three former Navy officers, RADM Horne, RADM Lehman, and Captain Wardwell all demonstrate that the U.S. Navy approved reasonably precise specifications and indeed controlled all aspects of the design, manufacture, installation, and maintenance of EHI pumps or valves installed on any Navy ships, including prescribing and proscribing all warnings, labels, or other caution statements affixed to or accompanying such equipment. (Horne Decl. ¶¶ 11-13; Lehman Decl. ¶¶ 9-11; Wardwell Suppl. Decl. ¶¶ 5, 7, 11.) RADM Lehman discusses the ultimate control exercised by the U.S. Navy over all aspects of products installed on Navy vessels in the 1950s and 1960s:

> [t]he Navy was intimately involved with and had final approval of all technical and engineering drawings, operating manuals, safety or hazard information and any other written information that accompanied a piece of equipment. The Navy determined the nature of hazards to be subject to any precautionary labeling and the content of any such labeling, including any asbestos hazards.

> In the 1950s and 1960s, the Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation and warnings associated with its ships and did not permit deviation by any of its contractors.

(Lehman Decl. ¶ 10.)

RADM Horne also testifies that with regard to warnings, including asbestos warnings, the

U.S. Navy had

> precise specifications as to the nature of any communications affixed to equipment supplied by EHI to the Navy. EHI would not have been permitted, under the detailed Navy specifications, associated regulations, and procedures, to affix any type of warning or caution statement regarding asbestos to the equipment intended for installation onto a Navy vessel, beyond those required by the Navy.

(Horne Decl. ¶ 12.) Additionally, all EHI pumps or valves installed on Navy ships conformed to

such specifications, as any deviation would have resulted in a rejection of such equipment.

(Lehman Decl. ¶ 10 ("Any EHI pumps or valves had to conform with military specifications or

the U.S. Navy would not have permitted their installation on any Navy ships.").)

Finally, EHI warned the U.S. Navy of any risks concerning EHI pumps or valves for

which the Navy was unaware. (Wardwell Suppl. Decl. ¶ 5.) With regard to asbestos risks,

however, from as far back as the 1940's and 1950's, the U.S. government was fully aware of the

risks of the use of asbestos. *See Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1019, 1028

(S.D. Ill. 1989) (finding the third element of the government contractor defense satisfied because

the government's knowledge regarding asbestos hazards in the 1940s and 1950s was superior to

that of defendant manufacturers; court relied on the deposition testimony of two former Air

Force officers who testified that the government was fully aware of the risks of asbestos in the

1940s and 1950s during the construction of the aircraft at issue).

Indeed, the U.S. Navy's knowledge in the 1950s and 1960s regarding asbestos hazards exceeded that of any manufacturer such as EHI. Attached is the declaration of Dr. Robert Sawyer, an occupational medicine physician with extensive Navy experience and knowledge. (Sawyer Decl. ¶¶ 1-6.) Dr. Sawyer attests that "[t]he information and knowledge possessed by the Navy with respect to the specification and use of asbestos, and the health hazards associated with asbestos use aboard Navy vessels, represented contemporary state-of-the-art and exceeded information and knowledge that reasonably could have been provided by a pump manufacturer such as EHI." (*Id*. ¶ 9.) EHI thus establishes the government contractor defense as a colorable federal defense to Plaintiffs' claims. *See In re "Agent Orange" Prod. Liab. Litig.*, 304 F. Supp. 2d 442, 450 (E.D.N.Y. 2004) (government contractor defense is a colorable federal defense for purposes of federal officer removal).

b.    Defense Production Act

As a matter of law, a contractor that performs its contract under the DPA is immunized from liability for damages in tort, contract, or otherwise resulting from that performance. Section 707 of the Defense Production Act provides:

> No person shall be held liable for damages or penalties for any act or failure to act resulting directly or indirectly from compliance with a rule, regulation, or order issued pursuant to this Act, notwithstanding that any such rule, regulation, or order shall thereafter be declared by judicial or other competent authority to be invalid.

50 U.S.C. app. § 2157. Plaintiffs' alleged claims against EHI arise from its performance of a contract issued pursuant to the DPA and therefore EHI is immune from suit.

The DPA compels contractor performance regardless of the contractor's other contractual obligations and regardless of whether the contract is detrimental to the contractor's business interest. Because the statute compels a contractor's performance, section 707 of the Act grants

the contractor immunity from liability arising from that performance.  *See Eastern Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 996-98 (5th Cir. 1976) (DPA's immunity provisions should be given broad interpretation in order to fulfill statutory purpose).

Congress clearly intended the Act's unqualified immunity language to apply regardless of the nature of the damage claims or penalties.  The broad scope of the immunity is evidenced by a comparison of section 707 with the immunity provision of the Second War Powers Act, the predecessor statute effective during World War II.  Section 301 of the Second War Powers Act, Pub. L. No. 77-507, 56 Stat. 176, 180 (1942), amended section 2(a)(7) of the National Defense Act of 1940 to provide that, "[n]o person shall be held liable for damages or penalties for any default under any contract or order which shall result directly or indirectly from compliance with this subsection (a)."  Section 707 of the DPA followed the basic language of the Second War Powers Act, but, in order to ensure even broader protection to defense contractors, substituted the phrase "for any act or failure to act" for the phrase "for any default under any contract or order."

Here, EHI cannot be held liable to Plaintiffs for the activities at issue (*i.e.,* the design, manufacture, installation, maintenance of and provision of warnings for products installed on Navy vessels), as such activities resulted directly from compliance with detailed and comprehensive Navy specifications and directives.  (Horne Decl. ¶¶ 11-13; Lehman Decl. ¶¶ 9-11; Wardwell Suppl. Decl. ¶¶ 5, 7, 11.)  As RADM Lehman explains, "All Navy equipment installed on Navy vessels in the 1950s and 1960s, including pumps and valves supplied by EHI to the Navy, were supplied in accordance with specific rated order contracts between the Navy and contractors such as EHI.  No equipment could have been supplied without such a contract." (Lehman Decl. ¶ 12; *see* Wardwell Suppl. Decl. ¶ 4 ("[a]ll contracts for products installed on

Navy vessels were 'rated' contracts entered into pursuant to 50 U.S.C. §§ 2061-2171").)

Through these contracts, EHI was required to comply with detailed specifications and directives

prescribing and proscribing all aspects of products installed on Navy vessels. (*Id.* ¶ 5.) As such,

EHI's actions at issue resulted directly from compliance with Navy contracts and specifications,

and thus EHI establishes the DPA as a colorable federal defense to Plaintiffs' claims. *See, e.g.*,

*Ryan,* 781 F. Supp. at 945 (holding that the DPA is a colorable federal defense for the purposes

of federal officer removal); *Arness v. Boeing North Am., Inc.*, 997 F. Supp. 1268, 1273 (C.D.

Cal. 1998) (same).

> c.    Derivative Sovereign Immunity

Finally, EHI also asserts the colorable federal defense of derivative sovereign immunity.

As a government contractor performing work pursuant to its contract with the U.S. Navy, EHI is

protected from liability under the derivative sovereign immunity doctrine. *Yearsley v. W. A.*

*Ross Constr. Co.*, 309 U.S. 18, 20-21 (1940). EHI's work was performed pursuant to contracts

with the U.S. Navy, and in accordance with Navy specifications and directives, and EHI's work

conformed to such contracts and requirements.

Indeed, attached as Exhibit 5 to Captain Wardwell's supplemental declaration is a true

and correct copy of an exemplar EHI technical manual for a variable delivery piston pump,

Model No. PVV-5020-FC-1-20-B, dated April 1963. (Wardwell Suppl. Decl., Ex. 5.) This

technical manual, approved by the Chief, U.S. Navy Bureau of Ships, was supplied by EHI to the

U.S. Navy in accordance with Contract No. 86916, dated July 6, 1962. (*Id.* ¶ 10.) As

demonstrated by this exemplar technical manual, any pumps or valves supplied by EHI for

installation on any Navy ships were in accordance with specific contracts between EHI and the

Navy. (*See id.*; *see also* Lehman Decl. ¶ 12 ("equipment installed on Navy vessels in the 1950s

and 1960s . . . were supplied in accordance with specific rated order contracts . . . . No [EHI

- 24 -

pumps or valves] could have been supplied without such a contract.").)  Through such contracts, the U.S. Navy provided detailed specifications and directives regarding all aspects of products installed on Navy vessels, including prescribing and proscribing warnings on any products supplied for such Navy vessels.  (*See* Wardwell Suppl. Decl. ¶ 10.)

As Plaintiffs' alleged injuries result directly from EHI's actions performed pursuant to contracts with the U.S. Navy and in accordance with Navy specifications and directives, and EHI's work conformed to such contracts and requirements, EHI cannot be held liable for Plaintiffs' alleged injuries under the derivative sovereign immunity doctrine.  *See Yearsley*, 309 U.S. at 20-21; *Myers v. United States*, 323 F.2d 580, 583 (9th Cir. 1963); *Dolphin Gardens, Inc. v. United States*, 243 F. Supp. 824, 827 (D. Conn. 1965).

## <u>CONCLUSION</u>

For the above-stated reasons, EHI submits that this Court has subject matter jurisdiction over this action and that EHI's removal of this action from state court was proper based on federal officer removal grounds.  Accordingly, EHI respectfully requests that this Court deny Plaintiffs' Motion to Remand.  EHI requests oral argument on Plaintiffs' Motion.

Dated:  July 6, 2007                              Respectfully submitted,

                                                  __s/ Andrew Sapon_____
                                                  Andrew Sapon, Esq. (Bar No. AS-1536)
                                                  Patrick Steinbauer, Esq.
                                                  Bivona & Cohen, P.C.
                                                  Wall Street Plaza
                                                  88 Pine Street
                                                  New York, NY  10005-1886
                                                  (212) 363-3100 (phone)
                                                  (212) 363-9824 (fax)


                                                  *Of Counsel:*
                                                  Raymond B. Biagini, Esq.
                                                  Lisa M. Norrett, Esq.
                                                  John W. Lomas, Jr., Esq.
                                                  McKenna Long & Aldridge LLP
                                                  1900 K Street, N.W.
                                                  Washington, D.C.  20006
                                                  (202) 496-7500 (phone)
                                                  (202) 496-7756 (fax)


                                                  **Attorneys for Defendant**
                                                  **Eaton Hydraulics Inc., f/k/a**
                                                  **Vickers, Incorporated**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SALVATORE GITTO<br>AND PHYLLIS GITTO,<br><br>                Plaintiffs,<br><br>vs.<br><br>A.W. CHESTERTON CO., INC.,<br>*et al.*,<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 07 CV 4771 (DC) |

## **ORDER**

Upon consideration of Plaintiffs' Motion to Remand and Defendants' Opposition thereto,

it is, by the Court, this _____ day of _____, 2007,

ORDERED that Plaintiffs' Motion to Remand is DENIED.


_____
Honorable Denny Chin
United States District Judge