UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SALVATORE GITTO
AND PHYLLIS GITTO,

        Plaintiffs,

vs.

A.W. CHESTERTON CO., INC.,
et al.,

        Defendants.

Civil Action No. _____

**DECLARATION OF ARTHUR F. WARDWELL IN SUPPORT OF DEFENDANT
EATON HYDRAULICS INC.'S NOTICE OF REMOVAL**

I, Arthur F. Wardwell, declare the following:

1. I am a retired Captain of the United States Navy, for which I served between 1958 and 1982.

2. I began my Navy career in 1958, immediately after receiving a Bachelor of Science degree from Maine Maritime Academy. Throughout my Navy career, I concentrated in ship design, engineering, construction, overhaul, operation, and inspection.

3. Specifically, I served as Assistant Repair Officer at Long Beach Naval Shipyard; Force Material Officer, U.S. Navy Cruiser/Destroyer Force, U.S. Pacific Fleet; Senior Lieutenant Commander, Planning and Design Office, Bath Iron Works Shipyard; Special Navy Project Officer, Triple A Shipyard, San Francisco; Chief Engineer and Manager of the Fleet Rehabilitation and Modernization ("FRAM") Program for the DD-886; and Assistant Engineer on the U.S.S. General William Mitchell (AP-114).

4. In 1978, I was promoted to Captain and assigned as the Commanding Officer of the Office of Supervisor of Shipbuilding, Conversion, and Repair, San Francisco. Subsequently, in 1981, I was assigned as the Commanding Officer of the Navy's Engineering Duty Officer School at the Mare Island Naval Shipyard ("Mare Island"). Finally, in August 1982, I retired from the Navy with the rank of Captain after twenty-seven years of service.

5. Following my Navy retirement, I entered the private sector shipyard business as the first General Manager of a new shipyard in San Diego, which subsequently became Continental Maritime of San Diego.

6. In addition to my training and experience in Navy ship construction, as outlined above, I served as a Director of the Shipbuilding Council of America from 1986 through 1994 and a Director of the San Diego Repair Association from its inception in 1982 through 1994.

7. I am aware that a lawsuit has been filed against several Defendant corporations, including Eaton Hydraulics Inc., formerly known as Vickers, Incorporated ("Eaton"), by an individual Plaintiff and his spouse claiming injuries allegedly resulting from exposure to asbestos and asbestos-containing products. I understand that Plaintiff Salvatore Gitto alleges he was exposed to asbestos and asbestos-containing products aboard several Navy ships at the Brooklyn Navy Yard while employed by the U.S. Navy. I also am aware that Plaintiff alleges exposure to and subsequent injuries from certain Eaton products aboard these Navy ships. It is my understanding that Plaintiff also alleges that Defendant corporations, including Eaton, failed to warn Plaintiff of the alleged hazards related to asbestos in such products.

8. Based on my twenty-seven years of service in the U.S. Navy, as discussed above, I can attest to the level of direction, supervision, and control exercised by the Navy over the design, manufacture, and maintenance of equipment aboard Navy vessels.

9. Through my various positions in the Navy, I have personal knowledge of the design, manufacture, and maintenance of products installed on U.S. Navy vessels. All products supplied for Navy vessels, including equipment manufactured by Eaton, were manufactured in accordance with reasonably precise Navy specifications and were reviewed and approved by the Navy at the vendor's plant and at the shipbuilding yards. In addition, any Eaton products used on a Navy vessel conformed to the Navy specifications.

10. Moreover, the Secretary of the Navy, or his delegees, including Naval Sea Systems Command ("NAVSEA") and the specific Contracting Officers, exclusively developed the ship designs and plans, as well as comprehensive and detailed regulations and specifications

for all shipboard equipment, and such Navy officers supervised, enforced, and approved compliance with these Navy plans, regulations, and specifications by contractors such as Eaton. In addition, all contracts for products installed on Navy vessels were "rated" contracts entered into pursuant to 50 U.S.C. §§ 2061-2171.

11. With regard to any products supplied by Eaton to the Navy for use aboard any Navy vessels, all aspects of the design, performance requirements and materials for construction were specified by the Secretary of the Navy or his delegees. Such Navy specifications and standards prescribed the use of asbestos-containing insulation for products. In other words, if asbestos was in any steering gear pumps supplied by Eaton, it was prescribed explicitly by the Navy through such Navy specifications and standards, and Eaton could not unilaterally change or omit asbestos. Furthermore, to my knowledge, at all times, Eaton apprised the military of any concerns of which it had actual knowledge relating to asbestos.

12. In addition to prescribing the use of asbestos, with respect to asbestos warnings, the U.S. Navy had precise specifications as to the nature of any communications affixed to equipment supplied by Eaton to the Navy. Eaton would not have been permitted, under the detailed Navy specifications, associated regulations, and procedures, to affix any type of warning or caution statement regarding asbestos to the equipment intended for installation onto a Navy vessel, other than those required by the Navy. In other words, Eaton could not unilaterally change any asbestos warnings, markings, or labels required by the Navy for any such equipment.

I declare under penalty of perjury that the foregoing is true and correct.

Arthur F. Wardwell

Dated: June 4, 2007